In re FLIGHT TRANSPORTATION CORPORATION SECURITIES LITIGATION.

SUBCLASSES I, II, III (SHAREHOLDERS), Appellees,

Subclass IV (Unitholders), Appellant,

Subclass V, and Thomas C. Bartsch, receiver, Appellees,

v.

FOX AND COMPANY, Opperman & Paquin, James F. McGovern, American Home Assurance Company, Reavis & McGrath, a Partnership, Norwest Bank Minneapolis, N.A., Norwest Bank Calhoun-Isles, N.A., St. Paul Fire & Marine Insurance Co., Alexander & Alexander Services, Inc., Alexander & Alexander, Inc., Evanston Insurance Company, Ezell Jones, Marjorie Terhaar, Russell T. Lund, Jr., Wardell M. Montgomery, Delbert Oldenburg, and Larry Walston, Appellees.

Nos. 85–5425, 86–5012.

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1986.

Decided June 11, 1986.

Rehearing and Rehearing En Banc Denied July 31, 1986.

William McCarthy, Boston, Mass., for appellant.

Lowell Sachnoff, Chicago, Ill., Thomas Bartsch and Edward Glennon, Minneapolis, Minn., for appellees.

Before ARNOLD, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and FAGG, Circuit Judge.

ARNOLD, Circuit Judge.

This is an appeal from orders of the District Court [1] approving a series of settlements made in the Flight Transportation Corporation class-action securities litigation. We hold that the District Court did not abuse its discretion, that it committed no error of law, and that its findings of fact are not clearly erroneous. We therefore affirm.

The background facts are given in our previous opinion, *In re Flight Transportation Corp. Securities Litigation,* 730 F.2d 1128 (8th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985). There, we affirmed with some modifications an order of the District Court approving the "Sharing Agreement," a document which provides for the distribution of money among the creditors and securities holders of Flight Transportation Corporation (FTC), which is in bankruptcy. FTC's securities holders were certified as a class, and

---

1. The Hon. Charles R. Weiner, United States District Judge for the Eastern District of Pennsylvania, sitting by designation as a United States District Judge for the District of Minnesota.

this class was divided into five subclasses. Subclass IV, members of which are appellants before us in the present appeal, consisted of purchasers of FTC units, including debentures and stock warrants, under a registration statement dated June 4, 1982. We shall refer to this subclass as Unitholders.

After approval of the Sharing Agreement as modified, the FTC-related litigation proceeded in the District Court. The focus of the litigation, as our previous opinion explains, is a charge of fraud or culpable negligence against FTC and others in connection with certain of FTC's securities issues. Vigorous efforts were made to settle remaining claims against groups of defendants. Before us in the present case are proposed settlement agreements between the plaintiffs and five defendants or groups of defendants: (1) Alexander & Alexander, Inc., Alexander & Alexander Services, Inc. (FTC's aircraft insurance carrier), Evanston Insurance Company (FTC's directors' and officers' insurance carrier), and FTC's outside directors; (2) Opperman & Paquin (FTC's outside counsel), American Home Assurance Company (Opperman & Paquin's insurance carrier), and related parties; (3) Norwest Bank Minneapolis, N.A., FTC's primary lender, an affiliate of Norwest Bank, and St. Paul Fire & Marine Insurance Company; (4) Fox & Co. (FTC's auditor) and related parties; and (5) Reavis & McGrath (legal counsel to certain underwriters for FTC public offerings).

Subclass IV, the appellant Unitholders, object to the District Court's order approving these settlements primarily because of a provision obligating the plaintiffs to indemnify and hold harmless the settling defendants against any judgments that may be obtained against them arising out of matters which formed the basis of this litigation. We do not agree that the inclusion of this provision in the settlement agreements in question required the District Court to disapprove them.

In the first place, only two of the settlement agreements, those with Fox & Co. and Reavis & McGrath, contain true indemnity provisions. The other agreements include only a "judgment reduction" provision. In such a provision, a settling plaintiff agrees, in order to settle an action with defendant A, that any later judgment obtained against defendant B will be automatically reduced by any amount which B recovers over against A by cross-claim or separate action for contribution or indemnity. To this sort of judgment-reduction provision Subclass IV does not seem really to object. Its concern, instead, may be that the District Court's opinion approving the settlements, *In re Flight Transportation Corp. Securities Litigation*, Master Docket No. 4–82–874 (D.Minn. October 17, 1985), seems to treat all of the settlement agreements as containing an indemnity provision properly so-called, that is, a provision which would require a settling plaintiff to indemnify a settling defendant for any recoveries secured against that defendant arising out of the underlying controversy, whether or not the amount of those recoveries exceeded the amount paid by the settling defendant to the settling plaintiff in order to obtain the settlement agreement, or the amount that the settling plaintiff may recover from someone else who in turn recovers over against the settling defendant. To the extent that this is Subclass IV's fear, we can allay it. Except for the Fox & Co. and Reavis & McGrath agreements, we construe the settlement agreements not to contain this kind of indemnity properly so-called, but, rather, to be limited to a simple judgment-recovery mechanism. Such a limited obligation Unitholders seem to concede was within the discretion of the District Court. Appellees class plaintiffs and FTC's receiver agree with this limiting interpretation. Brief of Appellees Class Plaintiffs and the Receiver 5 n.4.

As to the agreements with Fox & Co. and Reavis & McGrath, which do go beyond a simple judgment-recovery mechanism,[2] the District Court found as follows:

---

**2.** We note, however, that the indemnity obligation contained in the Reavis settlement is

The Court recognizes the concern that counsel for subclass IV ... have for the provisions of the settlements which require the plaintiffs to defend and indemnify the defendants for all claims related to matters which formed the basis of the FTC litigation. But while one can conceivably spin out scenarios which would require these provisions to be invoked (the objectors have not done so), the possibility of such scenarios reaching fruition is remote. This litigation has been in progress for well over three years and has been the subject of much public attention. Thus, there is little likelihood that new claims will be asserted. More importantly, however, the proposed settlements, as previously mentioned, call for the defendants to assign to the plaintiffs all claims, cross-claims, etc. that are asserted or may be asserted by the defendants. The claims that will be assigned to the plaintiffs represent a significant portion of the universe of all claims which could be brought against the defendants. This provides real and substantial protection to the plaintiff class members against the possibility of the indemnification provisions being invoked.

Slip op. 7–8. This finding that the risk to which the indemnity provisions expose Subclass IV (and, for that matter, all other members of the plaintiff class) is tolerable, is not clearly erroneous, and we therefore accept it.

Subclass IV objects that the risk which it is being required to assume must be worth something, else settling defendants would not have insisted on the inclusion of this provision in the settlement agreements. Appellants further assert that the settlement agreements confer no benefit whatsoever on them, because they have already received, as a result of the Sharing Agreement and related negotiations, almost all of their claims. No additional cash payments, they say, will be forthcoming for them as a result of the settlement agreements. Ac-

cordingly, they characterize the agreements as requiring Subclass IV to give up something of value, the indemnification provisions, while receiving nothing whatever in return. This, they say, cannot be fair.

We disagree with this characterization of the lawsuit. The present settlement agreements may not be considered in isolation. They are merely the latest chapter, perhaps the last, in a complex series of suits and negotiations. The Sharing Agreement contemplated further recoveries, whether by judgment or by settlement, and it is not unfair for later settlement agreements adding to the funds created by the Sharing Agreement to take into account previous payments to various members of the plaintiff class, including Subclass IV. The District Court was persuaded that the benefits to Subclass IV were sufficient to justify as fair and reasonable the imposition on that Subclass (and, we again add, on all other members of the plaintiff class) of the risk posed by the indemnity provisions. We cannot say that this decision was an abuse of discretion.

Unitholders argue also that the settlement agreements now before us were concluded in violation of the Sharing Agreement itself, because counsel for Unitholders were not permitted, they say, to participate in the negotiations leading up to these agreements. The Sharing Agreement, appellants argue, provides that no settlements may be submitted to the District Court for approval without the consent of at least three of the four claimant groups, these groups being Subclass IV, the other class plaintiffs, the receiver, and the creditors. According to appellants, only two of these groups, the other class plaintiffs and the receiver, consented to the submission of these proposed settlements to the District Court. Appellees reply that it does not matter what the course of negotiations was, or whether a procedural provision of the Sharing Agreement was violated in the

more limited than that contained in the Fox settlement. The Reavis indemnity is limited to

the $1.6 million it is paying for the settlement.

submission of these proposed settlements, so long as the District Court, after a full and fair hearing at which all objections to the settlement agreements were heard, found that they were fair, reasonable, and adequate. We need not reach the legal merits of this dispute, because now, as a practical matter, we know that three out of four of the relevant groups have approved the settlements. The participating creditors have not appealed the order of the District Court, and therefore must be taken, at least *de facto,* to be in agreement with the settlements approved by that court.[3]

Subclass IV also claims that it is unlawful for the District Court to force it to accept a settlement. Citing Fed.R.Civ.P. 23(c)(4), it points out that a subclass must be treated as a separate class for present purposes, a proposition that appellees do not contest. A class, appellants argue, cannot be required to accept a settlement to which it has not agreed. In this connection, shortly before the argument, appellants called our attention to the following language in *Evans v. Jeff D.,* — U.S. —, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986):

> Rule 23(e) wisely requires court approval of the terms of any settlement of a class action, but the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed.... Rule 23(e) does not give the court the power, in advance of trial, to modify a proposed consent decree and order its acceptance over either party's objection. The options available to the District Court were ...: it could have accepted the proposed settlements; it

could have rejected the proposal and postponed the trial to see if a different settlement could be achieved; or it could have decided to try the case.

We see no violation of these principles in the action taken by the District Court here. Its opinion gave Subclass IV the option of going to trial. "The court takes this opportunity to inform the objecting parties that they may proceed to trial on their claims...." *In re Flight Transportation Corp. Securities Litigation, supra,* slip op. 8. Subclass IV complains that no real option was given it, because the District Court also said that the parties could not both proceed to trial and retain the benefits that they had derived from the Sharing Agreement. "Any trial of this matter will be conditional upon the renunciation by the parties desiring a trial of their claims under the Sharing Agreement and the return of any monies distributed to date. Simply stated, the objecting parties cannot claim to be parties to the proposed settlements for one purpose and not parties for another." *Ibid.*

We see no coercion or impropriety in this language. It would certainly not have been fair to permit Subclass IV, which to date has received over $11,000,000 in cash, much more than received by other members of the plaintiff class, to retain this money while also rejecting the present settlements. As indicated above, the Sharing Agreement and the present settlement agreements cannot be viewed as isolated from each other. They are chapters in a continuing story, all of the parts of which are interdependent. When Subclass IV accepted substantial cash payments under the Sharing Agreement, it knew that further settlement negotiations would be tak-

---

**3.** In support of their claim that Subclass IV was excluded from settlement negotiations and did not consent to the submission of the proposed settlement agreements to the District Court, appellants have submitted a proposed supplemental appendix, together with a motion for leave to file it. This motion is opposed by appellees. The motion for leave to file the supplemental appendix is granted, but, for reasons stated in text, we cannot agree that the matters contained therein, even if all true, require reversal of the

District Court's orders. The extent to which counsel for a subclass participated in negotiations leading up to the settlement agreement is certainly a relevant factor to be considered by the District Court in deciding whether the settlement is fair and adequate, but it is not a *sine qua non,* so long as the District Court considered and ruled on all objections voiced by counsel for the objecting subclass, which it clearly did here.

ing place against certain defendants, and that the results of these negotiations would be submitted to the District Court for approval. The requirement of court approval protected it against unfair imposition, and, as a last resort, the Subclass also retains the right to go to trial against the settling defendants, provided always that it may not take the benefit of this course of settlement negotiations without also assuming the burdens which other members of the plaintiff class have assumed.

In short, we find no error of law, abuse of discretion, or clearly erroneous finding of fact in the actions of the District Court. The orders of that court approving the various settlement agreements in question on this appeal are therefore

Affirmed.